# UNITED STATE DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Lionel Tohannie Yazzie, Wesley Elmer Wills, Russell Lynn Norton, Michael Dale Benson, Raymond Leon Semler, Lloyd Anthony Hartleib, Steven Allan Housman, and William Edward Will, Jr., | Civ. No. 12-399 (PAM/JJK) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kevin Moser, Elizabeth Barbo, Scott Benoit, Susan Johnson, Joseph Mullen, Lucinda Jesson, Nancy Johnston, and Steve Sayovitz, in their individual and official capacities, | |
| Defendants. | |

Raina Borrelli, Esq., and Daniel E. Gustafson, Esq., Gustafson Gluek PLLC, counsel for Plaintiffs.

Marsha Eldot Devine, Esq., Minnesota Attorney General's Office, counsel for Defendants.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. 29). A hearing was held on the matter on May 12, 2014, before the undersigned. The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons discussed below, this Court recommends that the motion be granted in part and denied in part.

## BACKGROUND

### I.    Procedural History

Plaintiffs bring this action under 42 U.S.C. § 1983 alleging that Defendants violated Plaintiffs' state and federal constitutional rights.  Their claims arise from an incident occurring in February 2012, when Plaintiffs were placed in the High Security Area ("HSA") of the Moose Lake Facility of the Minnesota Sex Offender Program ("MSOP") while they were investigated for a suspected escape attempt.

This action was originally filed in February 2012, but was stayed pursuant to an Order affecting all civil rights cases brought by an individual or group of individuals civilly committed to MSOP.  (Doc. No. 19.)  The stay was lifted as to this particular action in June 2013 (Doc. No. 20), and on January 13, 2014, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim.  (Doc. No. 29.)

### II.    Relevant History

Plaintiffs allege that on or around February 7, 2012, they were handcuffed by an MSOP A-Team Security Counselor and informed that they were being taken to the HSA pending a criminal investigation by MSOP's Office of Special Investigations. (Doc. No. 25, Am. Compl. ¶ 17.)  All Plaintiffs were pat-searched and searched using a metal-detecting wand prior to being escorted to the HSA. (*Id.*)  After Plaintiffs were confined in the HSA, MSOP staff conducted searches of Plaintiffs' rooms and the yard of each Plaintiff's living unit; this occurred between approximately 2 p.m. and 4 p.m. (*Id.* ¶ 18.)  Between 9 p.m. and 10 p.m.

the Plaintiffs' rooms were searched again, along with each Plaintiff's entire living unit.  (*Id.*)

Following their individual arrivals to the HSA, Plaintiffs were informed by MSOP security counselors that they needed to comply with a strip search if they wanted to have their handcuffs removed.  (*Id.* ¶¶ 19, 26, 33, 41, 49, 56, 63, 70.) Plaintiffs allege they were told that if they did not comply, they would have to wear the handcuffs for four hours, and were led to believe that if they did so, they would not need to submit to a strip search.  (*Id.*)  Plaintiffs Yazzie, Will, Benson, Semler, and Hartleib complied immediately; Plaintiffs Norton and Housman eventually agreed to the search after approximately four hours of being handcuffed.  (*Id.* ¶¶ 19, 26, 41, 49, 56, 63, 70.)  Plaintiff Wills at all times refused to comply with the strip search and after four hours of being handcuffed was forcefully searched by MSOP security guards.  (*Id.* ¶ 33.)

After waiting approximately one hour in their individual HSA cells, Plaintiffs received a document titled "Administrative Request and Authorization," notifying them that they were being held pending an investigation into an alleged escape plan and were being placed on Administrative Restriction ("AR") status.  (*Id.* ¶¶ 20, 27, 34, 42, 50, 57, 64, 71.)  Later that day, Plaintiffs received a document titled "Administrative Restriction Status Plan" detailing the property and movement that they would have access to while on AR status.  Plaintiff Wills also received an "Administrative Restriction Status Review Panel Request," which he immediately completed. (*Id.* ¶ 35.)

Plaintiff Wills alleges that he asked to contact his attorney repeatedly, but according to the MSOP Client Rights Coordinator Natalie Steinert his request was placed in the mail on February 7, 2012, and was not received until February 9, 2012, after he was released and no longer needed to make the call. (*Id.* ¶¶ 37, 39.)  Plaintiff Hartleib alleges that he asked to call his attorney after being placed in the HSA cell and was told that he could not make phone calls for twenty-four hours.  (*Id.* ¶ 64.)  While at the HSA in handcuffs, Plaintiff Housman alleges that he asked to call his attorney but was told that he could not call until he was strip searched.  (*Id.* ¶ 70.)  He also alleges that he further asked to call his attorney multiple times throughout the day on February 7, but was not permitted to do so until "very late in the day."  (*Id.* ¶ 72.)

On February 7 and 8, 2012, MSOP employees conducted Administrative Restriction Status Panel Reviews for each of the Plaintiffs, at which time the Panel continued each Plaintiff's placement on AR status in the HSA.  (*Id.* ¶¶ 22, 29, 36, 45, 52, 59, 66, 73).  Plaintiff Yazzie alleges that he was not invited to attend his Panel Review, and Plaintiff Wills alleges that he was not allowed to attend his.  (*Id.* ¶¶ 22, 36.)  Plaintiffs Will, Norton, Benson, Semler were present at their Panel Reviews.  (*Id.* ¶¶ 29, 45, 52, 59.)  And Plaintiffs Hartleib and Housman did not attend their Panel Reviews.  (*Id.* ¶¶ 66, 73.)

On February 9, 2012, Plaintiffs' AR status was discontinued and all Plaintiffs were released from the HSA.  Specifically, Plaintiffs were released from the HSA in accordance with MSOP policy because a police agency did not begin

4

investigation of the suspected crime within seventy-two hours of receiving a report of the alleged crime. (*Id.* ¶¶ 24, 31, 38, 47, 54, 61, 68, 75.)  Both while being held and subsequent to their release, Plaintiffs were given no further information about the accusations or their release. (*Id.*)

## III.   Plaintiffs' Claims

Plaintiffs' Amended Complaint asserts the following counts against Defendants: (1) Denial of Due Process in Violation of the Fourteenth Amendment to the United States Constitution; (2) Unreasonable Seizures in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; (3) Unreasonable Searches in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution; and (4) Denial of Access to Legal Counsel in Violation of the Sixth Amendment to the United States Constitution.  Plaintiffs seek various forms of injunctive and declaratory relief.  Defendants now move to dismiss all of the claims asserted against them.

## DISCUSSION

## I.   Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiffs.  *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview*

*Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (stating that the court "may consider some materials that are part of the public record or do not contradict the complaint" (quotations omitted)).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

To successfully plead a § 1983 civil rights cause of action, a complainant must allege a set of historical facts, which, if proven true, would demonstrate that the named defendant(s) violated the complainant's federal constitutional rights while acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

6

Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Speed v. Ramsey County*, 954 F. Supp. 1392, 1397 (D. Minn. 1997) (same). In other words, civil-rights claimants must plead facts showing each defendant's *personal* involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (holding that plaintiff "failed to allege sufficient personal involvement by any of defendants to support such a claim"). In sum, when a plaintiff seeks relief under § 1983, his complaint must set forth specific factual allegations showing what each named defendant allegedly did, or failed to do, while acting under color of state law, which purportedly violated the plaintiff's federal constitutional rights.

Defendants also bring their motion under Rule 12(b)(1), arguing that the Court does not have subject-matter jurisdiction to consider Plaintiff's claims for damages against Defendants for actions taken in their official capacities based on Eleventh Amendment immunity. Dismissal pursuant to Rule 12(b)(1) is proper where an attack on the complaint's alleged basis for subject-matter jurisdiction reveals that there is no actual basis for jurisdiction. *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). On a motion to dismiss under Rule 12(b)(1), a defendant may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.

7

1990).  In a facial challenge to jurisdiction, such as the one before this Court in regard to Defendants' Eleventh Amendment immunity argument, review is restricted to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss.  *See Osborn*, 918 F.2d at 729 n.6.

## II.   Immunity under the Eleventh Amendment

Defendants argue that the Court does not have subject-matter jurisdiction to consider Plaintiffs' claims for monetary damages against Defendants for actions taken in their official capacities based on Eleventh Amendment immunity. (Doc. No. 31, Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem." 12–13.)  Plaintiffs have made clear, however, that they have limited their request for monetary damages to Defendants in their individual capacities.  (*See* Doc. No. 36, Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") 26, n.4.) Nevertheless, to the extent Plaintiffs may seek any such monetary damages against Defendants in their official capacities, this Court agrees that monetary damages are not recoverable.  *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").  Any claim for

monetary damages against Defendants in their individual capacities, however, remains.[1]

## III.   Plaintiffs' Constitutional Claims

Plaintiffs assert that Defendants have violated their constitutional rights in violation of 42 U.S.C. § 1983, which prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws."  Section 1983 is not itself "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Specifically, Plaintiffs allege violations of his Fourth, Sixth, and Fourteenth Amendment rights under the U.S. Constitution.  This Court addresses below whether Plaintiff has stated claims for which relief may be granted.

### A.   Fourteenth Amendment – Procedural Due Process Claim

Plaintiffs allege in Count I of the Amended Complaint that Defendants violated Plaintiffs' due process rights by confining them "in the HSA for two days without being presented with any evidence to support their detainment," and by failing to provide them with documentation to show that less restrictive

---

[1]   Defendants also argue that Plaintiffs have failed to plead facts to demonstrate the personal involvement of each of the named Defendants in the constitutional violations alleged in the Complaint.  (Defs.' Mem. 14–19.)  This Court finds, however, that Plaintiffs have alleged sufficient facts regarding personal involvement to survive a motion to dismiss on that ground.

alternatives were considered, as required under MSOP policy." (Doc. No. 25, Am. Compl. ¶¶ 90, 91.) Plaintiffs also allege that the MSOP's AR Status policy "does not require any specific evidence to be provided or given to patients prior to placing them in isolation on the HSA." (Am. Compl. ¶ 85.) In addition, Plaintiffs noted that "[d]uring that time Plaintiffs were handcuffed, strip-searched, denied their property, and confined alone in a cell." (Am. Compl. ¶ 90.) However, in their Opposition to Defendants' Motion to Dismiss, Plaintiffs explain that their due process claim is based solely on their lack of opportunity to challenge or otherwise be heard prior to having their liberty interests constrained, and that "whether the use of restraints is acceptable in a facility and whether strip searching patients is constitutional are not relevant to Plaintiffs' procedural due process argument." (Pls.' Opp'n 14.) Plaintiffs have further clarified that they are asserting a procedural due process claim rather than a substantive one. (*Id.* at 10.)

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The threshold question in assessing Plaintiffs' procedural due process claim is whether they were deprived of a protected liberty or property interest. *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 445–46 (8th Cir.1995). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies."

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  A property interest may arise from "'existing rules or understandings that stem from an independent source such as state law.'"  *Skeets v. Johnson*, 816 F.2d 1213, 1214 (8th Cir.1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

To state a procedural due process claim, a plaintiff must show that he was deprived of the protected interest at stake without due process of law.  *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999.) The court must then balance (1) the private interests affected; (2) the risk of deprivation of the private interest through the process that was provided and the probable value of additional or substitute procedural safeguards; and (3) the state's interest. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976.)

Plaintiffs argue that their due process rights were violated when they were denied a hearing prior to being handcuffed and confined in the HSA for two days. (Pls.' Opp'n 12.)  Plaintiffs further argue that they "were never shown any evidence supporting the alleged escape plan," and that MSOP failed to provide any justification or evidence supporting their confinement. (*Id.* at 13.) In other words, Plaintiffs argue that they have a protected liberty interest in freedom from bodily restraint.  (*Id.* at 11.)

Because Plaintiffs are in custody but not serving a prison sentence for a criminal conviction, their status is much like that of a pre-trial detainee. *See Youngberg v. Romeo*, 457 U.S. 307, 320 (1982) (recognizing similarity between

due process rights of civilly committed detainees and those of pre-trial detainees); *Serna v. Goodno*, 567 F.3d 944, 949 (8th Cir. 2009).  In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that pre-trial detainees cannot be "punished" without being afforded the procedural protections of due process. *Id.* at 535. However, the Supreme Court also recognized in *Bell* that "not every unwelcome event that befalls a pre-trial detainee can be considered a form of 'punishment' that implicates due process concerns."  *Wickner v. Collelo*, No. 11-3448 (DWF/JJK), 2011 WL 6960975, at *3 (D. Minn. Dec. 14, 2011) (unpublished) (recommending summary dismissal of a complaint).  "'There is, of course, a de minimis level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539, n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

The Court in *Bell* observed that when evaluating the constitutionality of conditions of pretrial detention, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id.* at 538.  "Absent proof of intent to punish, [the Court] noted, this determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  *Block v. Rutherford*, 468 U.S. 576, 584 (1984) (quotations omitted).  The Court has also advised that "[s]uch consideration are peculiarly within the province and professional expertise of corrections officials,

and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* at 584–85 (quotations omitted). In other words, being required to comply with an administrative restriction or condition that adversely affects a pretrial detainee is not "punishment" if it is "reasonably related to a legitimate governmental objective" such as maintaining institutional order and safety. *Bell*, 441 U.S. at 539–40.  However, if the restriction or condition is deemed punishment, a pretrial detainee has the right, under the Due Process Clause, to notice and an opportunity to be heard.  *See Matthews*, 424 U.S. at 334 (explaining that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands"); *compare Cummings v. Dunn*, 630 F.2d 649, 650–51 (8th Cir. 1980) (finding, without resolving the issue, that no constitutional violation occurred where a pretrial detainee was afforded the full *Wolff* due process protections before being placed in segregation), *with Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006) (explaining that a civilly committed sexual offender is entitled to, at a minimum, notice and an opportunity for rebuttal).

Here, Plaintiffs have not alleged that Defendants intended to punish Plaintiffs by placing them on AR status or in the HSA.  They only allege that Defendants placed them on AR status pursuant to an MSOP policy, not that the purpose of MSOP's policy is to punish the MSOP detainees.  Further, Plaintiffs have not alleged that the internal security of the MSOP facility or the protection of

the public is not a legitimate governmental interest.  And Plaintiffs have not

alleged that the MSOP policy is not reasonably related to the security of that

facility or the protection of the public.  As the Court stated in *Bell*, "[t]here is no

basis for concluding that pretrial detainees pose any lesser security risk than

convicted inmates."  441 U.S. at 546, n.28.  Here, even when taking the facts

pleaded in the light most favorable to Plaintiffs, this Court concludes that

Plaintiffs have not alleged a form of 'punishment' that implicates due process

concerns.  Plaintiffs have alleged no facts that would show that Defendants'

placement of Plaintiffs on AR status and placing them in the HSA so that

Defendants could investigate a possible escape plan was not related to the

government interest of maintaining order in the facility and protecting the safety

of other patients in the MSOP and the public.  *See Smith v. Copeland*, 87 F.3d

265, 268 (8th Cir. 1996) (holding that "if a particular condition or restriction of

pretrial detention is reasonably related to a legitimate governmental objective, it

does not, without more, amount to 'punishment'"); *see also Wickner*,  2011 WL

6960975, at *2-3 (recommending summary dismissal of a complaint stating that

MSOP patient put on AR status due to alleged escape plan did not violate due

process where the purpose was not to punish him and any injury he suffered was

de minimis).[2]  Therefore, this Court need not consider what process would be

---

[2]      If their claims rely on a protected liberty interest in being free from bodily
restraint under all circumstances, these claims must also fail. The Eighth Circuit
has held that "[a]lthough an involuntarily committed patient of a state hospital is

(Footnote Continued on Next Page)

due under the Constitution, and this Court recommends the dismissal with prejudice of Plaintiffs' procedural due process claim.

Even if Plaintiffs had alleged a protected liberty or property interest, there was an available and adequate post-deprivation remedy here.  The Supreme Court has "described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).  But in certain circumstances, "a postdeprivation hearing will satisfy due process requirements."  *Id.* at 542 n.7. Pre-deprivation due process is not always required when a compelling or overriding interest necessitates "a quick action" by the State. *See Keating v. Neb. Public Power Dist.*, 562 F.3d 923, 928 (8th Cir. 2009) (citations omitted); *see also, e.g.*, *Franco v. Moreland*, 805

---

(Footnote Continued from Previous Page)
not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner" and that "[t]he Minnesota program for civil commitment of dangerous persons . . . to state custody and the accompanying curtailment of their liberty interests is constitutionally permissible." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (internal quotations omitted). Further, to the extent that Plaintiffs argue that the policy itself created a liberty interest because it did not provide for a hearing prior to placement on AR status, the argument fails.  "[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).  "Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined." *Id.* (quotations omitted).

F.2d 798 (8th Cir. 1986) (determining "adequate due process requires an analysis of the governmental and private or individual interests that are affected," distinguishing situations requiring an immediate response from those where no urgency or emergency exists); *see also Senty-Haugen*, 462 F.3d at 888 (concluding due process rights were not violated where plaintiff "received notice of why he was placed in protective isolation immediately after that placement, and he had the opportunity to rebut the rationale at the review panel meeting the following day"); *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (concluding that when administrative segregation status is not punitive, but is instead necessary for non-punitive reasons, a pre-deprivation hearing is not Constitutionally required, especially where procedures exist for periodic review of inmates on such segregated status).

## B.    Fourth Amendment Claims

Plaintiffs allege that Defendants have violated their Fourth Amendment Right to be free from unreasonable searches and seizures by "unlawfully detaining them in the HSA for two days," "by refusing to remove Plaintiffs' handcuffs until they complied with a strip search," and by "unlawfully strip searching them."  (Am. Compl. ¶¶ 96, 102.)

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  In *Bell v. Wolfish*, the Supreme Court addressed the reasonableness of a search or seizure in an

institutional setting, stating, "The Fourth Amendment prohibits only unreasonable searches," and to determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails."  441 U.S. at 558–59.  In balancing the need for the particular search (and resulting seizure) against the invasion of personal rights, a court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted.  *Id.* at 559.  In addition, a court must take into account the expert judgment of officials adopting and implementing the policies at issue.  *Id.* at 547.  *Bell* places a "heavy burden" on Plaintiffs to show that institution officials, in initiating the policies at issue, "exaggerated their response to the genuine security considerations that actuated these restrictions and practices."  *Id.* at 562.

The Eighth Circuit has held that involuntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches, analogous to the right retained by pretrial detainees.  *Serna*, 567 F.3d at 948. Therefore, while such persons are entitled to more considerate treatment and conditions than criminals, their rights must still be balanced against the interests of the state.  *See Youngberg*, 457 U.S. at 321–22.  Accordingly, "not all search techniques may be swept under the rug of deference to the detention-center decisionmakers[.]"  *Serna*, 567 F.3d at 955.

Defendants argue that Plaintiffs' Fourth Amendment strip-search claim should be dismissed because "it is well-established that reasonable strip searches are constitutional." (Defs.' Mem. 28.) But this case is only at the pleading stage, and the Supreme Court in *Bell* instructs that the balancing that needs to be done to determine the reasonableness of a search must be done on a case-by-case basis and requires at least some evidentiary record:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S at 559. In addition, although the Eighth Circuit has upheld the use of strip searches for the purposes of protecting the public, protecting transport teams, and preventing dangerous contraband from entering MSOP, it has also recently considered "the availability of less intrusive techniques when assessing the reasonableness of a challenged procedure," especially when "personal privacy" interests "and dignity" are at stake. *Arnzen v. Palmer*, 713 F.3d 369, 373, 375 (8th Cir. 2013) (affirming district court's issuance of a preliminary injunction prohibiting staff from capturing images of civilly committed sex offenders while they occupied single-person bathrooms).

The Court must take Plaintiff's allegations as true and it is confined by the allegations alleged in the Complaint. Facts relating to the scope of the searches, the manner in which they were conducted, the justifications for the searches, and

the places in which they were conducted are yet to be developed.  Although

Defendants may ultimately prove that the various searches are reasonable, this

Court is unable at this stage to evaluate the factors necessary to determine if the

strip searches conducted in this case are reasonable and appropriate, and

Plaintiff has provided enough facts in their Complaint to provide Defendants

notice of a plausible claim.  *See Allen v. Ludeman*, No. 10-176 (ADM/JJK), 2011

WL 978658, at *2 (D. Minn. Mar. 17, 2011) (denying motion to dismiss strip

search claim where plaintiff alleged defendants forced him to do a strip search

before and after leaving the Annex at the Moose Lake Prison facility in order to

attend Native American ceremonies at MSOP's main building);  *Beaulieu v.

Ludeman*, No. 07-1535 (JMR/JSM), 2008 WL 2498241, *12 (D. Minn. June 18,

2008) (surviving motion to dismiss because there was insufficient information at

the pleading stage to evaluate the reasonableness of the strip searches).

Plaintiffs also allege that Defendants, in violation of their Fourth

Amendment rights, required Plaintiffs to be handcuffed and placed in the HSA for

two days.  Citing MSOP Policy 301.084, which provides that an MSOP client may

be placed in HSA when he or she is suspected of committing a crime or is the

subject of a criminal investigation, Defendants argue that "MSOP's security

concerns outweigh any private interests Plaintiffs may have had in avoiding a

higher security level[.]"[3]  (Defs.' Mem. 27.)  Specifically, Defendants state that the

justification for the seizure of Plaintiffs was to maintain control and security when

investigating an alleged escape plan.  Defendants assert that "when balancing

MSOP's need to maintain control and security and thus, to separate MSOP

clients who may have been planning an escape or attempted an escape from the

rest of the population who may wish to escape, holding Plaintiffs in HSA until the

conclusion of an investigation and determining that no charges are being brought

and no further investigation is needed, is reasonable under the circumstances."

(*Id.*)  Defendants make no further argument as to why handcuffing in this

situation was either reasonable or necessary other than stating that a lesser

---

[3]     Defendants have provided copies of the policies at issue as exhibits, which
indicate the purpose of the policies on the face of the policies.  (Doc. No. 32,
Aff'd of Marsha Eldot Devine ¶¶ 2–4, Exs. A, B, and C; *see, e.g.*, Ex. A, "High
Security Area" policy (stating its purpose is "[t]o provide an area of the facility that
is more frequently monitored with specialized safety procedures to reduce the
risk of harm to clients, staff and the public and to manage dangerous behavior")
(stating also that "Clients will be placed in the HSA or equivalent level of
restriction on Administrative Restriction Status when: a) Such placement, in light
of the particular facts and circumstances is reasonably necessary to maintain
safety and security . . . . b) Lesser restrictions are considered and found to be
insufficient to maintain safety and security; c) Placement is for non-punitive
purposes").)

        Consideration of the policies at issue does not convert Defendants' motion
to dismiss into a motion for summary judgment since they are embraced by the
Complaint.  *See Dittner Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir.
2013) (stating that courts may consider "matters incorporated by reference or
integral to the claim, items subject to judicial notice, matters of public record,
orders, items appearing in the record of the case, and exhibits attached to the
complaint whose authenticity is unquestioned, without converting the motion into
one for summary judgment").

restrictive alternative is not required and that the policy does not prohibit the use of handcuffs for 4–5 hours.  (Doc. No. 40, Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss 9.)

Defendants, however, through this motion are asking the Court to bypass conducting a full analysis on the issue of reasonableness of the seizures, including the handcuffing for several hours duration.  Defendants want the Court to simply take their word for it that the seizures were reasonable because the policies have a stated purpose of maintaining safety and security and because Defendants have provided a justification for the seizures.  However, facts are yet to be developed as to other factors that will help determine the reasonableness of the seizures in this particular case, including facts related to the scope of the seizures (including whether lesser restrictions were considered) or the manner in which the seizures were conducted, including the imposition of handcuffs for several hours.  Plaintiffs, at a minimum, have raised an issue as to whether the use of handcuffs and the continued confinement in HSA ("essentially the same as solitary confinement in prison") were reasonable, even if Plaintiffs were suspected of planning an escape.  (Am. Compl. ¶ 17); *see Beaulieu*, 2008 WL 2498241, at *14 ("The test as to whether a governmental action is appropriate under the Fourth Amendment in this context is whether the 'offending' action is reasonable given the rights of the plaintiffs and the interest of the Program.") (citing *Bell*, 441 U.S. at 559, and *Youngberg*, 457 U.S. at 324 (holding that a committed individual "enjoys constitutionally protected interests in conditions of

reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests")).

Plaintiffs will undoubtedly have a difficult task overcoming the above-described "heavy burden" showing that their temporary isolation in the HSA and the related searches were unconstitutional exaggerated responses to legitimate security concerns, but taking the facts alleged in Plaintiffs' Complaint together, and assuming the allegations to be true, this Court concludes that Plaintiffs have articulated plausible Fourth Amendment claims.  As such, this Court recommends denying Defendants' motion insofar as it seeks dismissal of Counts II and III.

### C.    Sixth Amendment Claim - Denial of Access to Legal Counsel

Count IV of Plaintiffs' Amended Complaint asserts that Plaintiffs' Sixth Amendment right to counsel was violated when they were not provided access to counsel during the time they were confined to the HSA.  Plaintiffs allege that the "the HSA policy . . . does not provide that patients may call their attorney."  (Am. Compl. ¶ 87.)  And some of the Plaintiffs allege that they specifically asked to contact their attorney, but their request was denied.  (Am. Compl. ¶¶ 37, 39, 64, 70, 72.)

The right to counsel under the Sixth and Fourteenth Amendments does not attach until formal adversary judicial proceedings have begun against a person. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (noting that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that

adversary judicial proceedings have been initiated against him"); *see also*

*VonKahl v. United States of America*, 242 F.3d 783, 788 (8th Cir. 2011) ("[T]he

Sixth Amendment right to counsel 'does not attach until a prosecution is

commenced, that is, at or after the initiation of adversary judicial criminal

proceedings—whether by way of formal charge, preliminary hearing, indictment,

information, or arraignment.'") (citation omitted).  Here, Plaintiffs were never

charged with a crime, nor had any other action taken place that amounts to a

critical stage under federal constitutional law.  Therefore, there was never a legal

basis for a Sixth Amendment right to attach.  Accordingly, Plaintiffs' Sixth

Amendment claim must fail.

## IV.    Qualified Immunity

The doctrine of qualified immunity protects "government officials

performing discretionary functions . . . from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  This Court considers two questions to determine whether

Defendants are protected by qualified immunity: (1) whether the facts that

Plaintiff has alleged or shown, when viewed in his favor, support a finding that the

conduct of Defendants violated a constitutional right; and (2) whether that

constitutional right was "clearly established" at the time of the incidents such that

a reasonable official would have known that his or her actions were unlawful.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "Qualified immunity is

appropriate only if no reasonable fact-finder could answer yes to both of these questions." *Nelson v. Corr. Med. Serv.*, 583 F.3d 522, 528 (8th Cir. 2009).

Defendants assert they are entitled to qualified immunity from liability of all of Plaintiffs' claims because Defendants actions were objectively reasonable under the circumstances. But as explained above, Plaintiffs have alleged facts, when viewed in their favor, support claims that Defendants' conduct violated Plaintiffs' clearly established Fourth Amendment rights. And a party is not entitled to dismissal on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue. *Wiegand v. Spadt*, 317 F. Supp. 2d 1129, 1137 (D. Neb. 2004) (citing *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000)). "Predicate facts" consist of "only the relevant circumstances and the acts of the parties themselves, and not the conclusions of others about the reasonableness of those actions." *Id.* at 1137 n.3 (citing *Pace*, 201 F.3d at 1056). Based on the facts pleaded in Plaintiffs' Amended Complaint with respect to their Fourth Amendment claims, this Court cannot conclude without any evidentiary record that Defendants' actions under the alleged circumstances were "objectively reasonable." Therefore, this Court concludes that Defendants are not entitled to qualified immunity at this time.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc.

No. 29), be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, it is

recommended that Defendants' Motion to Dismiss be **GRANTED** as follows:

>    (a) to the extent Plaintiff's claims for damages are asserted
>
> against Defendants for actions taken in their official capacities, those
>
> claims be dismissed with prejudice; and
>
>    (b) that Plaintiffs' Fourteenth Amendment procedural due process
>
> claim (Count I) and Sixth Amendment claim (Count IV), be dismissed with
>
> prejudice;

It is recommended that the motion otherwise be **DENIED**.


Date:  June 11, 2014

                                    _s/ Jeffrey J. Keyes_
                                    JEFFREY J. KEYES
                                    United States Magistrate Judge


  Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 25, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen** days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a *de novo* determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall

timely order and file a complete transcript of the hearing within **ten days** of receipt of this Report and Recommendation.