## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lionel Tohannie Yazzie, Wesley Elmer
Wills, Russell Lynn Norton, Michael Dale
Benson, Raymond Leon Semler, Lloyd
Anthony Hartleib, Steven Allan Housman,
and William Edward Will, Jr.,

Case No. 12-cv-399 (PAM/JJK)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

Kevin Moser, Elizabeth Barbo, Scott Benoit,
Susan Johnson, Joseph Mullen, Lucinda
Jesson, Nancy Johnston, and Steve Sayovitz,
in their official and individual capacities,

Defendants.

---

This matter is before the Court on Magistrate Judge Jeffrey J. Keyes's Report and

Recommendation ("R&R") dated June 11, 2014. The parties have timely filed Objections

to the R&R. On review, the Court must determine de novo any part of the R&R that has

been specifically objected to. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. LR

72.2(b). Having conducted that review, the Court overrules Plaintiffs' Objection, sustains

in part and overrules in part Defendants' Objection, and adopts and supplements the R&R.

## BACKGROUND

Plaintiffs have been civilly committed to the Minnesota Sex Offender Program

("MSOP") and are currently confined at a treatment facility in Moose Lake, Minnesota.

(Am. Compl. (Docket No. 25) ¶ 4.) They bring this action under 42 U.S.C. § 1983 to recover

for alleged violations of their constitutional rights during a February 2012 incident at the

facility.  (<u>Id.</u> ¶ 1.)

According to Plaintiffs, on the morning of February 7, they were handcuffed, pat searched, and searched with a metal-detecting wand by MSOP staff, and then escorted to the High Security Area ("HSA").  (<u>Id.</u> ¶ 17.)  Once they arrived to the HSA, Plaintiffs were strip searched and put in locked cells.  (<u>Id.</u> ¶¶ 19, 26, 33, 41, 49, 56, 63, 70.)  Plaintiffs received two documents explaining that they were being detained pending a criminal investigation into a suspected escape attempt and that they were being placed on Administrative Restriction ("AR") status.  (<u>Id.</u> ¶¶ 20-21, 27-28, 34-35, 42-43, 50-51, 57-58, 64-65, 71-72.)

Over the next two days, MSOP staff conducted panel reviews of Plaintiffs' AR status. (<u>Id.</u> ¶¶ 22, 29, 36, 45, 52, 59, 66, 73.)  The staff indicated that they were aware of significant information showing that Plaintiffs were planning an escape, and continued Plaintiffs' placement on AR status.  (<u>Id.</u>)  Through the entire process, Plaintiffs denied any involvement in an escape attempt.  (<u>Id.</u> ¶¶ 23, 30, 37, 46, 53, 60, 67, 74.)

On February 9, MSOP staff ended Plaintiffs' AR status and released them from the HSA.  (<u>Id.</u> ¶¶ 24, 31, 38, 47, 54, 61, 68, 75.)  MSOP policy provided that Plaintiffs could not be held in the HSA for more than two days on escape allegations unless a policy agency intervened to investigate those allegations.  (<u>Id.</u>)  Both while being detained and after being released, Plaintiffs were given no further information about the reasons for their detention or the circumstances of their release.  (<u>Id.</u>)

Plaintiffs proceeded to sue various MSOP officials in their official and individual capacities, alleging that Defendants violated their federal and state constitutional rights. (Compl. (Docket No. 1).) Specifically, Plaintiffs asserted claims for denial of procedural due process under the Fourteenth Amendment, unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and under Article I, Section 10 of the Minnesota Constitution, and denial of access to legal counsel under the Sixth Amendment. (Am. Compl. ¶¶ 88-110.)   For those alleged violations, Plaintiffs sought declaratory, injunctive, and monetary relief.  (Id.)

Defendants then moved to dismiss all of Plaintiffs' claims for lack of subject-matter jurisdiction, for failure to state a claim, and based on qualified immunity.  (Mot. to Dismiss (Docket No. 29).)   Under 28 U.S.C. § 636(b)(1)(B), Defendants' motion was referred to Magistrate Judge Keyes.

Following a hearing, Magistrate Judge Keyes issued the R&R, recommending that this Court: (1) dismiss all claims to the extent they seek damages from Defendants for actions taken in their official capacities based on Eleventh Amendment immunity, (2) dismiss the Fourteenth Amendment claims because Plaintiffs do not allege that their detention was punishment implicating due-process concerns or was not reasonably related to the legitimate governmental interests of maintaining internal security and protecting the public, (3) allow the Fourth Amendment claims because they state with sufficient plausibility the unreasonableness of the strip searches and detention, (4) dismiss the Sixth Amendment claims given that no formal judicial proceedings were initiated so to attach the right to

3

counsel, and (5) reject Defendants' qualified-immunity defense because the record is not developed enough to assess whether Defendants' actions were objectively reasonable. (R&R (Docket No. 45).)  Both sides now object to certain parts of the R&R.  (Pls.' Objection (Docket No. 46); Defs.' Objection (Docket No. 47).)

**DISCUSSION**

**I.     Plaintiffs' Objection**

Plaintiffs solely object to the recommended dismissal of their Fourteenth Amendment claims.  Plaintiffs reiterate that they were detained without first having either the opportunity to challenge the basis for their detention or access to any evidence that justified their detention.  Plaintiffs argue that, in alleging those conditions unconstitutionally deprived them of the right to be free from bodily restraint, they have sufficiently pleaded the denial of their procedural due-process rights.  Under the more exacting standard for civilly committed persons, however, Plaintiffs have not stated a viable claim.

To state a procedural due-process claim, a plaintiff must allege enough facts to plausibly show that he was deprived of a protected liberty or property interest without due process of law.  Schmidt v. Des Moines Public Sch., 655 F.3d 811, 817 (8th Cir. 2011).  In the civil-commitment context, the standard applicable to an alleged due-process violation is the same as that applied in the pretrial-detainee context.  See Youngberg v. Romero, 457 U.S. 307, 320 (1982) (comparing the due-process rights of involuntarily committed persons to those of pretrial detainees); Serna v. Goodno, 567 F.3d 944, 948-49 (8th Cir. 2009) (concluding that involuntarily civilly committed persons retain liberty interests analogous to

4

pretrial detainees).

As pretrial detainees enjoy a protected liberty interest in freedom from bodily restraint, so also do Plaintiffs. See Youngberg, 457 U.S. at 316 (placing the interest in freedom from bodily restraint at the "core" of the liberty protected by the Due Process Clause of the Fourteenth Amendment and determining that interest survives involuntary commitment).

But the process due to pretrial detainees, as well as civilly committed persons, before their interest in freedom from bodily restraint can be constrained is not unbounded. In Bell v. Wolfish, the Supreme Court drew the line on the constitutionality of pretrial-detention conditions at whether those conditions were tantamount to punishment. 441 U.S. 520, 535 (1979). The Court stressed that pretrial detainees cannot be punished. Id. at 535-36. Even so, the Court upheld certain restrictions on liberty, noting that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective," like maintaining internal security and protecting the public, "it does not, without more, amount to punishment." Id. at 539 (quotation marks removed).

Here, Plaintiffs have neglected to plead that the conditions of their detention rose to the level of punishment. Plaintiffs have not alleged that Defendants intended to penalize them. Plaintiffs have not alleged that maintaining internal security at the MSOP facility and protecting the public at large is not a legitimate governmental interest. And Plaintiffs have not alleged that their brief detention in the HSA so that MSOP staff could investigate the suspected escape attempt was not reasonably related to that governmental interest.

At most, Plaintiffs have asserted that they were entitled to a hearing before being detained. Yet they do not go further, as they must, and allege how being denied a hearing under the circumstances constituted punishment. For that reason, Plaintiffs have failed to allege that they were denied procedural due process, and their Fourteenth Amendment claims will be dismissed.

## II.    Defendants' Objection

Defendants raise several objections to the R&R. Defendants first object to the conclusion that Plaintiffs have adequately pleaded each Defendants' connection to the alleged constitutional violations. Having again scrutinized the Amended Complaint, the Court finds no merit in Defendants' objection. To survive a motion to dismiss on a § 1983 claim, Plaintiffs need only allege that Defendants were personally involved in or had direct responsibility for the disputed unconstitutional acts. Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985). Plaintiffs have alleged that each of the Defendants either created and implemented the MSOP policies directing their treatment, participated in the continuance of their AR status, or executed the strip searches and detention. (Am. Compl. ¶¶ 5-12, 77-87.) Those allegations satisfy the pleading requirements.

Defendants next object to the recommendation to allow Plaintiffs' Fourth Amendment claims. Defendants continue to assert that Plaintiffs' strip searches and detention were constitutional because they were undeniably reasonable. But at this stage of the proceedings, Plaintiffs have plausibly pleaded the unreasonableness of the strip searches and detention, and a more developed evidentiary record is necessary to make a reasonableness

6

determination.

Whether a search or seizure is reasonable turns on whether a legitimate governmental interest in carrying out the search or seizure outweighs the intrusion on privacy. Serna, 567 F.3d at 949. In Bell, the Supreme Court articulated a balancing test for determining whether searches and seizures conducted on pretrial detainees, and likewise civilly committed persons, are reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 559. As part of the reasonableness inquiry, the availability of less-intrusive measures should be considered. Serna, 567 F.3d at 955 (qualifying that an evaluation of reasonableness does not require that no lesser-restrictive alternative be shown, only that the availability of less-intrusive techniques were contemplated).

While Defendants may ultimately prevail on the reasonableness of the strip searches and detention as measured responses to valid security concerns, their motion to dismiss must be denied for two reasons. First, Plaintiffs have alleged enough to state Fourth Amendment claims. In particular, Plaintiffs have alleged that Defendants violated their Fourth Amendment rights by "unlawfully detaining them in the HSA for two days," "by refusing to remove Plaintiffs' handcuffs until they complied with a strip search," and by "unlawfully strip searching them." (Am. Compl. ¶¶ 96, 102.) Second, no facts are in the record that

speak in detail to the scope, manner, justification, and place of the strip searches and detention.  The Court requires those facts before it can balance the <u>Bell</u> factors to assess whether the strip searches and detention were reasonable.  <u>See</u> <u>Allen v. Ludeman</u>, No. 10-cv-176 (ADM/JJK), 2011 WL 978658, at *2 (D. Minn. Mar. 17, 2011);  <u>Beaulieu v. Ludeman</u>, No. 07-cv-1535 (JMR/JSM), 2008 WL 2498241, at *12 (D. Minn. June 18, 2008).

In short, the plausibility of Plaintiffs' allegations as to the strip searches and detention and the necessity of further record developmentcompel allowing Plaintiffs' Fourth Amendment claims to proceed.

Defendants also object that Magistrate Judge Keyes failed to address whether Plaintiffs' unreasonable search and seizure claims under the Minnesota Constitution, to the extent they seek damages, should be dismissed.  Defendants correctly contend that, because the Minnesota Legislature has not enacted a statutory claim to monetary relief for state constitutional violations and the Minnesota Supreme Court has not recognized such a claim, there is no private right to damages under the Minnesota Constitution.  <u>See</u> <u>Riehm v. Engelking</u>, 538 F.3d 952, 969 (8th Cir. 2008); <u>Bird v. State, Dep't of Pub. Safety</u>, 375 N.W.2d 36, 40 (Minn. App. 1985).  Plaintiffs' state constitutional claims seeking damages therefore must be dismissed.

Finally, Defendants object to the recommended rejection of their qualified-immunity defense due to the undeveloped state of the record. Yet Defendants cite no factual or legal error in the recommendation and offer no other serious basis for the objection. The Court agrees that, in light of its holding on the Fourth Amendment claims, Defendants are not entitled to qualified immunity at this time.

**CONCLUSION**

Plaintiffs have not stated procedural due-process claims under the Fourteenth Amendment, have adequately pleaded each Defendants' personal involvement in or direct responsibility for the alleged constitutional violations, have stated unreasonable search and seizure claims under the Fourth Amendment, cannot state claims for damages under the Minnesota Constitution, and are not yet barred from recovering by qualified immunity. Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Objection to the R&R (Docket No. 46) is **OVERRULED**;

2.      Defendants' Objection to the R&R (Docket No. 47) is **SUSTAINED in part** and **OVERRULED in part**;

3.      The R&R (Docket No. 45) is **ADOPTED** and **SUPPLEMENTED**;

4.      Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Docket No. 29) is **GRANTED in part** and **DENIED in part**;

5.      All Counts of Plaintiffs' Amended Complaint (Docket No. 25), to the extent they seek damages against Defendants for actions taken in their official capacities, are **DISMISSED** with prejudice;

6.      Counts I and IV of Plaintiffs' Amended Complaint (Docket No. 25) are **DISMISSED** with prejudice; and

7.      Counts II and III of Plaintiffs' Amended Complaint (Docket No. 25), to the extent they seek damages against Defendants under the Minnesota Constitution, are **DISMISSED** with prejudice.


Dated: July 24, 2014

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge